Katten
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY  10022-2585
212.940.8800 tel
www.kattenlaw.com

JOSEPH V. WILLEY
joseph.willey@kattenlaw.com
212.940.7087 direct
212.940.6738 fax

August 4, 2017

The Honorable Raymond J. Dearie
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *United States of America and New York State ex rel. Irina Gelman, DPM v. Glenn J. Donovan, DPM, New York City Health and Hospitals Corporation, and Physician Affiliate Group of New York, P.C.*, No. 12 CV 5142 (E.D.N.Y.)

Dear Judge Dearie:

We represent the Defendants in this case, and write to briefly discuss the opinion in *United States ex rel. Chorches v. American Medical Response, Inc.*, --- F.3d ---, 2017 WL 3180616 (2d Cir. July 27, 2017), which counsel for Relator Irina Gelman ("Relator") submitted to the Court on July 31.

*Chorches* makes clear that allegations made on information and belief, to be permitted under Fed. R. Civ. P. 9(b) in a False Claims Act case, must be based on plausible allegations of a fraudulent billing scheme creating a strong inference that specific false claims were actually submitted to the government – not on mere supposition, hypotheses, or uninformed imaginings, such as those Relator engages in here. In *Chorches*, the complaint contained specific allegations that the defendant American Medical Response ("AMR"), a supplier of ambulance services, "routinely made its EMTs and paramedics revise or recreate their field-generated PCRs [Patient Care Reports] to include false statements purportedly demonstrating medical necessity to ensure that runs would be reimbursable by Medicare," and that "[s]upervisors at AMR specifically instructed EMTs and paramedics how to modify the PCRs by including false or misleading information, and admitted to [relator] that the purpose of such revisions was to qualify the run for Medicare reimbursement." 2017 WL 3180616, at *2. There were specific allegations that for several weeks following a particular ambulance run, a supervisor instructed a paramedic that completed the original PCR "to revise his PCR so that it could be submitted to Medicare for payment." *Id.* at *3. The complaint alleged that an EMT "was explicitly 'informed by [AMR supervisors who directed the scheme] that the revisions were required to qualify the run for Medicare reimbursement'" and "identifies specific instances in which AMR supervisors expressly asked for a PCR to be falsified in order to qualify a run for Medicare reimbursement." *Id.* at *9. The complaint further alleged that "[t]he supervisors who asked [the EMT] to falsify PCRs specifically referenced Medicare, suggesting that the falsification of records may have



August 4, 2017
Page 2

been particularly necessary to secure reimbursement from federal insurance programs." *Id.* at *9 n.10. In addition, the relator in *Chorches* was prohibited from entering the administrative building of the defendant where all the billing was taking place and was not able to participate in AMR's billing procedures, *see id.* at *6. Using a "case-by-case approach," *id.* at *12, the court held that in such unique circumstances, where relator had specific knowledge of a fraudulent billing scheme but could not get access to the billing evidence to demonstrate it, the relator's failure to plead with specificity about bills submitted to the government could be excused.

The Amended Complaint here is strikingly different from that in *Chorches*. Here, Relator fails to allege a specific factual basis creating the "strong inference" required by *Chorches* that specific bills were submitted. The Amended Complaint contains no allegations that Relator was told to falsify records, or that records were falsified by anyone else, for the purpose of facilitating Medicare or Medicaid reimbursement. In fact, Relator does not allege, as the Second Circuit said she must, "the *falsity* of any submitted claims." *Chorches*, 2017 WL 3180616, at *15. The only alleged basis for the False Claims Act allegations against the Defendants are the unidentified, unspecified, unexplained references to "Standard Operating Procedures" that replaced the original Complaint's references to "information and belief."

Relator alleges, for example, that Dr. Donovan was not physically present for some services provided by podiatry residents, and while an attending podiatrist's physical presence would be required *if* a bill were submitted to Medicare for his professional services – which is not necessarily the case in the context of a residency program where services are often furnished by residents without the supervising physician being physically present – the Amended Complaint alleges no facts to create any inference that actual Medicare bills for professional services were submitted.[1] Nor does the Amended Complaint include any specific allegations creating a strong inference that a bill for any *hospital* service was submitted improperly, or at all; on the contrary, the Amended Complaint makes sweeping allegations that Dr. Donovan was not present for some services, without alleging that other attending physicians capable of supervising the hospital service were not sufficiently available, and without alleging any specific facts

---

[1] Contrast Relator's Amended Complaint here to the complaint in *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009), cited in *Chorches*, 2017 WL 3180616, at *9, where the Fifth Circuit found that the relator's "complaint sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud," including details of a "dinner meeting at which two doctors ... attempted to bring him into the fold of their on-going fraudulent plot," and of nursing staff attempting to assist relator "in recording face-to-face physician visits that had not occurred." *Grubbs*, 565 F.3d at 191-92. Given these facts, the Fifth Circuit found "[t]hat fraudulent bills were presented to the Government is the logical conclusion of the particular allegations in Grubbs' complaint even though it does not include exact billing numbers or amounts." *Id.* at 192. The Amended Complaint here is devoid of any such allegations of a detailed and specific fraudulent billing scheme.



Katten Muchin Rosenman LLP

August 4, 2017
Page 3

concerning submission of claims. Nor does Relator claim that she was in any way barred by Defendants from seeking to verify whether and under what circumstances bills were submitted.

In short, Relator has not alleged that specific fraudulent bills were submitted to the government, and also has failed to set forth a sufficient basis of factual knowledge of false or fraudulent billing to justify, as in *Chorches*, the pleading of false bills "on information and belief." Accordingly, the Amended Complaint fails to satisfy Rule 9(b) and should be dismissed for failure to plead False Claims Act violations with particularity. The *Chorches* court reiterated that Rule 9(b) is intended to protect defendants from reputational harm and strike suits where, as here, a relator's allegations of false claims are not "sufficiently strong" or "sufficiently robust." *Id.* at *11. Contrasting the allegations here with those reviewed in the *Chorches* opinion reaffirms that analysis.

Respectfully submitted,

Joseph V. Willey

cc: Kevin P. Mulry, Esq. (by ECF)
Geoffrey R. Kaiser, Esq. (by ECF)
David A. Zarett, Esq. (by ECF)