

**Kevin P. Mulry**
Partner

Direct Dial: 516.227.0620
Direct Fax: 516.336.2262
kmulry@farrellfritz.com

1320 RXR Plaza
Uniondale, NY 11556
www.farrellfritz.com

Our File No.
30683-100

August 10, 2017

BY ECF
Honorable Raymond J. Dearie
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States ex rel. Gelman v. Donovan, et al., No. 12-cv-5142 (RJD) (SLT)

Dear Judge Dearie:

We represent Relator Irina Gelman ("Relator") in the above-captioned action. Relator respectfully requests that the Court accept this letter, which is written in response to the letter brief filed by Defendants on August 4, 2017, Doc. No. 73.

Defendants' letter addressed the decision of the United States Court of Appeals for the Second Circuit in *United States ex rel. Chorches v. American Medical Response, Inc.*, No, 15-3930, 2017 WL 3180616 (2d Cir., July 27, 2017).[1] In *Chorches*, the Second Circuit held that a False Claims Act relator does not have to plead details of specific alleged false billings or invoices to the government, as long as she can allege facts leading to a strong inference that specific claims were submitted and that information about them are peculiarly within the defendant's knowledge.

In *Chorches*, Paul Fabula was an emergency medical technician for AMR, an ambulance company. He alleged that AMR falsely certified ambulance transports as being medically necessary and submitted claims it knew were not medically reimbursable under Medicaid. He alleged that AMR routinely made EMTs and paramedics revise or re-create reports to include false statements demonstrating medical necessity in order to qualify for Medicaid reimbursement. Relator, however, admittedly did not have personal knowledge of exact billing numbers, dates, or amounts for claims submitted to the government.[2] *Chorches*, 2017 WL 3180616, at *1-3, 7.

---

1   A copy of the decision had been previously provided to the Court by Relator, without argument, Doc. No. 72.
2   Fabula subsequently declared bankruptcy, and the bankruptcy trustee became the relator.

Honorable Raymond J. Dearie
August 10, 2017
Page 2

In addressing whether a *qui tam* complaint must allege specific identified false billings or invoices, the Court held that "a complaint can satisfy Rule 9(b)'s particularity requirement by making plausible allegations creating a strong inference that specific false claims were submitted to the government and that the information that would permit further identification of those claims is peculiarly within the opposing party's knowledge."  *Chorches*, 2017 WL 3180616, at *10.

In *Chorches*, the Court found that the relator had met this standard by pleading sufficient facts, on personal knowledge, to demonstrate that billing information was peculiarly within the knowledge of AMR and that he was unable, without the benefit of discovery, to provide billing details for claims submitted by AMR to the government. Relator had also sufficiently alleged facts on personal knowledge supporting a scheme to defraud and a strong inference that false claims were actually submitted to the government.  *Chorches*, 2017 WL 3180616, at *7-10.

In her memorandum in opposition to Defendants' motion to dismiss the first amended complaint ("FAC"), Relator argued that the Court should follow the standard now adopted by the Second Circuit, and demonstrated that the FAC sufficiently particularized the allegations of fraud under that standard.  *See* Relator's Opp. Mem., Doc. No. 64, at 35-39.  In contrast, Defendants relied upon a stricter standard that had been adopted by some District Courts but which has now been rejected by the Second Circuit.  *See* Defendants' Moving Mem, Doc. No. 63, at 16-23; Defendants' Reply Mem., Doc. No. 66, at 3-6.  The cases relied upon by Defendants are no longer good law, and they should not be relied upon.

Here, the FAC meets the particularization standard set out by the Second Circuit in *Chorches*:

> Rule 9(b) does not require that every *qui tam* complaint provide details of actual bills or invoices submitted to the government, so long as the relator makes plausible allegations . . . that lead to a strong inference that specific claims were indeed submitted and that information about the claims submitted are peculiarly within the opposing party's knowledge.

*Chorches*, at 49.

As in *Chorches*, the FAC adequately alleges a scheme to defraud.  The FAC alleges a fraudulent scheme to conceal material defects in the Coney Island Hospital ("CIH") podiatric medicine and surgery residency program (the "PMSR Program"), including a total absence of faculty supervision, the unauthorized practice by PMSR Program podiatrists, the creation of false records, the failure to maintain policies governing the PMSR Program, and fraudulent misrepresentations to CMS and CPME.  *See* Relator's Opp. Mem., Doc. No. 64, at 3-11.  The FAC also alleges a fraudulent scheme to submit claims for non-reimbursable teaching physician and podiatry resident services.  *See id*. at 12-15.  Regarding the GME fraud, the FAC contains extraordinarily detailed allegations describing an utterly fraudulent educational program, including allegations of residents operating entirely on their own without any faculty supervision or training, and the falsification of records by Dr. Donovan in order to graduate residents from the PMSR Program. FAC at ¶¶ 77-97.

The FAC also particularizes facts leading to a strong inference that specific claims were submitted.   Relator was required to enter information into the CIH electronic record system so

Honorable Raymond J. Dearie
August 10, 2017
Page 3

that patient care services could be properly billed.  Relator and other residents entered encounter notes for their services into that system to be reviewed and/or amended by Dr. Donovan, the PMSR Program Director.  After Dr. Donovan entered an attending note, and information on each patient visit, including the specific services rendered and the associated billing codes, was collected by Defendants, the services were billed to the Federal Health Care Programs.  FAC at ¶ 50-52, 57-58, 62-63, 70-76.  The FAC specifically alleges that Dr. Donovan was described as the "Billing Prov[ider]" on medical records, and that he supplied his "Attending Note."  FAC at ¶ 50.  The FAC further specifically alleges that the patients associated with these services and record entries were insured by Medicare or Medicaid. FAC at ¶¶ 50, 55, 60. The FAC also provides highly detailed descriptions of specific surgical procedures performed by two unlicensed and unpermitted residents in the PMSR Program, complete with dates of service and general patient descriptions, and specifically alleges that those services were billed to the Medicare or Medicaid programs. FAC at ¶¶ 70-71, 75-76. With respect to GME, there is no question that claims were submitted, as Defendants do not dispute that they applied for such funding on an annual basis through the submission of cost reports to the government detailing CIH's direct and indirect graduate medical education costs.  FAC at ¶ 97.  These allegations sufficiently particularize the submission of claims under the *Chorches* standard.

In addition, while Relator had knowledge leading to an inference that services were billed, she could not allege specific claim information, as that knowledge is peculiarly within the Defendants' knowledge.  In *Chorches*, the Second Circuit noted that it is "the circumstances constituting fraud" that must be particularized, and here Defendants are on notice of the alleged fraud.  *Chorches*, 2017 WL 3180616, at *10.  Moreover, the Second Circuit cautioned that a ruling that a relator must particularize specific claims when that knowledge is within the knowledge of a defendant would defeat the purpose of the False Claims Act.

> An interpretation of Rule 9(b) that requires *qui tam* plaintiffs to plead billing details regarding the submission of specific false claims, even when knowledge of such details is peculiarly within the defendant's purview, would discourage the filing of meritorious *qui tam* suits that can expose fraud against the government. Under that approach, by simply insulating its accounting department from personnel with operational knowledge, a corporate fraudster could ensure that few employee relators could successfully plead both the falsity of recorded information and the presentment of a claim containing those falsehoods.

*Chorches*, at 32.  As a PMSR resident, and one who occupied the position of Chief Resident in her final year of the Program, Relator was the quintessential "operational" employee, and obviously did not work in the accounting department. Relator knew, however, that the podiatry services being rendered through the PMSR Program were being billed under hospital protocols to payers, including Medicare and Medicaid, and that CIH required the creation and collection of notes and records by residents documenting those medical services, including the associated billing codes, expressly for that billing purpose.

Defendants' assertion that they must be protected from "reputational harm" and "strike suits" should thus be rejected.  Doc. No. 73, at 3.  The allegations of fraud in the FAC are sufficient to allay any concerns about reputational harm or strike suits.  *Chorches*, at 34-36.  There is nothing speculative about Relator's allegations that the services described in the FAC were billed.  Relator is not someone from outside the hospital basing her claims merely on conjecture.

Honorable Raymond J. Dearie
August 10, 2017
Page 4

As a hospital insider and medical professional who participated in generating the very podiatry services that were billed by CIH, and who was required to comply with documentation requirements imposed by CIH and the PSMR Program for billing purposes, Relator was in a unique position to know that billing of podiatry services was hospital policy.  Moreover, Relator's allegations in this regard are consistent with a common sense understanding of hospital protocols generally, in which medical services are routinely billed to third party payers.

Under the standard set out by the Second Circuit in *Chorches*, the allegations of the FAC sufficiently particularize fraud under Fed. R. Civ. P. 9(b), and the motion to dismiss on that ground should be denied.

                                              Respectfully submitted,

                                               *s/ Kevin P. Mulry*

                                              Kevin P. Mulry

cc:     All counsel (By ECF)