# Katten
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
www.kattenlaw.com

JOSEPH V. WILLEY
joseph.willey@kattenlaw.com
212.940.7087 direct
212.940.6738 fax

August 18, 2017

The Honorable Raymond J. Dearie
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States of America and New York State ex rel. Irina Gelman, DPM v. Glenn J. Donovan, DPM, New York City Health and Hospitals Corporation, and Physician Affiliate Group of New York, P.C.*, No. 12 CV 5142 (E.D.N.Y.)

Dear Judge Dearie:

On behalf of our clients, the Defendants in this case, we respectfully submit this letter in response to the August 10 letter of Relator Irina Gelman ("Letter").

In the Amended Complaint, there simply are no "plausible allegations creating a strong inference that specific false claims were submitted to the government," unlike the complaint reviewed in *United States ex rel. Chorches v. American Medical Response, Inc.*, --- F.3d ---, 2017 WL 3180616, at *10 (2d Cir. 2017). Unlike the complaint in *Chorches*, there are no allegations that Relator was told about any fraudulent billing or was directed to falsify medical records to support false claims. Relator also does not claim that she ever saw a false bill or learned about any fraudulent billing scheme.

The Letter refers to allegations that: (1) residents entered "encounter notes" for their services; (2) Dr. Donovan was listed as a "Billing Provider" and entered an "attending note" after each patient visit in Coney Island Hospital's medical records system; (3) Defendants—without reference to *which* of the Defendants—collected information about patient visits, including specific services and associated billing codes under dubious and speculative "Standard Operating Procedures"; and that (4) patients were covered by Medicaid and Medicare. *See* Letter at 3. The Letter states that the Amended Complaint cites specific instances in which two "unlicensed and unpermitted" residents assisted in specific podiatric procedures, for which details such as dates of service are alleged. Letter at 3. The Amended Complaint does not, however, allege that Medicaid or Medicare was billed for these specific procedures, as the Letter claims, but only that unspecified services performed by these residents were billed (Amended Complaint ¶¶ 71, 76).

There is, in short, nothing about these allegations that gives rise to a strong inference that any of the Defendants caused false bills to be submitted to Medicare or Medicaid. At the end of



**Katten**
Katten Muchin Rosenman LLP

August 18, 2017
Page 2

the Letter, Relator's counsel tries to overcome this shortcoming by stating that Relator "was in a unique position to know that billing of podiatry services was hospital policy" and that this comports with "a common sense understanding of hospital protocols generally, in which medical services are routinely billed to third party payers." In other words, Relator claims in the Letter that the allegations of the Amended Complaint must suffice because everyone knows that hospitals bill for their services. Even if such an overbroad generalization were correct – which it is not – it would not come close to meeting the pleading standards of Rule 9(b), which require that a complaint either identify specific false bills or contain "plausible allegations creating a strong inference that specific false claims were submitted to the government." *Chorches*, 2017 WL 3180616, at *10.

While the Amended Complaint may have alleged circumstances in which services that were performed and recorded would not be reimbursable, the mere fact that non-reimbursable services were performed in a not-for-profit municipal teaching hospital does not, as the Letter states, "lead to a strong inference that specific claims were indeed submitted" for non-reimbursable services. There are many reasons why healthcare services may be provided to patients (*e.g.*, in the best interest of patient care, education, clinical research, etc.) even though they may be non-reimbursable by certain payors, each with its own reimbursement rules; there are likewise many reasons other than billing for recording the services that were provided (*e.g.*, quality assurance, risk management, continuity of care, etc.). It is the job of accounting and billing departments throughout the healthcare system to review those records, cull therefrom those that describe only those services that are reimbursable by the relevant payors, and submit claims to those payors only for those reimbursable services. If the mere occurrence of non-reimbursable healthcare activity could suffice to support an inference under *Chorches* that such services were billed to payors unlawfully, then such inference can be made by *anyone*, as to *any* healthcare enterprise at *any* time, and the specificity protections of Rule 9(b) would be rendered meaningless. The mere performance of nonreimbursable services simply fails to support an inference, let alone a "strong inference," that bills were submitted for those nonreimbursable services. Neither the Amended Complaint's references to "Standard Operating Procedures" nor the Letter's incorrect and overbroad allusion to "common knowledge" provides any additional ground on which to find otherwise.

Respectfully submitted,

Joseph V. Willey



August 18, 2017
Page 3


cc:    Kevin P. Mulry, Esq. (by ECF)
        Geoffrey R. Kaiser, Esq. (by ECF)
        David A. Zarett, Esq. (by ECF)