# Katten
Katten Muchin Rosenman LLP

575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
www.kattenlaw.com

JOSEPH V. WILLEY
joseph.willey@kattenlaw.com
212.940.7087 direct
212.940.6738 fax

October 19, 2018

The Honorable Sanket J. Bulsara
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States of America and New York State ex rel. Irina Gelman, DPM v. Glenn J. Donovan, DPM, New York City Health and Hospitals Corporation, and Physician Affiliate Group of New York, P.C.*, No. 12 CV 5142 (E.D.N.Y.)

Dear Judge Bulsara:

Pursuant to the Court's Order dated September 27, 2018, defendants New York City Health and Hospitals Corp., Physician Affiliate Group of New York, P.C., and Glenn Donovan, D.P.M. (collectively, "Defendants") submit this letter brief requesting that the Court limit discovery to the period from July 1, 2010, when Relator Irina Gelman, DPM ("Relator") commenced her employment as a resident in the podiatric medicine and surgery residency program ("PMSR"), through October 12, 2012, when Relator filed her Complaint, and in any event, no later than June 30, 2013, the end of her final resident year at Coney Island Hospital ("CIH"). Relator makes no allegations in her Amended Complaint to justify a more expansive temporal scope of discovery.

Relator's Amended Complaint clearly concerns conduct between July 2010 and October 12, 2012. There is no allegation of a continuing course of conduct to submit false claims that would justify seeking discovery beyond October 2012. In the introduction of the Amended Complaint,[1] as in the original Complaint, Relator describes the allegations in the past tense. For example, according to Relator's Amended Complaint (which does not appreciably differ from her original Complaint), Defendants: (i) "knowingly *engaged* in a fraudulent course of conduct"; (ii) "*caused* millions of dollars in losses to the Medicare and Medicaid programs"; (iii) "*billed* Medicare and Medicaid for professional services"; (iv) *applied* for and *received* funding from Medicare and Medicaid for GME costs" (Am. Compl. ¶¶ 2, 3, 4). In stating the causes of action in the Amended Complaint, Relator alleges that Defendants "knowingly *presented* or *caused* to be *presented*, false

---

[1] Relator filed the Amended Complaint on August 4, 2015. (*See* Doc. No. 26.) As in the original Complaint, the allegations in the Amended Complaint, as described below, concern conduct from July 2010 through October 2012.

AUSTIN   CENTURY CITY   CHARLOTTE   CHICAGO   HOUSTON   IRVING   LOS ANGELES
NEW YORK   ORANGE COUNTY   SAN FRANCISCO BAY AREA   SHANGHAI   WASHINGTON, DC
LONDON: KATTEN MUCHIN ROSENMAN UK LLP
A limited liability partnership including professional corporations



October 19, 2018
Page 2

or fraudulent claims to … the United States government for payment or approval." (Am. Compl. ¶ 109; *see also id.* ¶¶ 115, 121, 127, 132, 138, 144, 150.)

The only allegation of a continuing course of conduct at all is the stock phrase "Defendants have billed and continue to bill the Federal Health Care Programs for Donovan's services . . ." (Am. Compl. ¶¶ 58, 63.) The Amended Complaint contains no support for the allegation that Defendants submitted false bills after October 2012. Indeed, Relator admitted that she was reassigned from clinical duties to the CIH library in *May 2012* and was teetering on the precipice of termination by August 2012. (Am. Compl. ¶¶ 101, 105.) In Judge Dearie's Memorandum & Order dated September 25, 2017, denying Defendants' motion to dismiss (the "Op."), the Court did not once suggest that Relator alleged a continuing course of conduct. Indeed, the Court referred to a "relevant time" that concluded at latest, in 2014.[2] (*See* Op. (Doc. No. 77) at 3.)

The allegations of the Amended Complaint also clearly begin in July 2010. None of the alleged specific conduct occurred prior to that date. She alleges unsupervised procedures in 2010 and 2012 (Am. Compl. ¶¶ 50-51, 80); residents lacking limited residency permits from July 2010 through 2012 (Am. Compl. ¶¶ 69, 70, 74-75); and falsifying records relating to the accreditation of the PMSR program in 2012. (Am. Compl. ¶¶ 93-94.) As with the time period beyond October 2012, the only allegation preceding July 2010 is the bald assertion that "[u]pon information and belief, such conduct has been occurring at least from in or about 2006, which is when Donovan became PMSR Program Director." (Am. Compl. ¶¶ 54, 59, 64; *see also id.* ¶¶ 79, 97.) In its Opinion, the Court acknowledged that Relator's allegations dated back to 2006, but then noted that the "only one specific incident" alleged was dated May 11, 2012. (Op. at 4.) In referring to the "relevant period," the Court referred to a period beginning in July 2010.[3] (*Id.* at 3.)

The Court expanded on its view that the "relevant period" began in July 2010 and ended in or around 2013 (or early 2014 at the latest) when it provided the basis for its conclusion that allegations in the Amended Complaint, accepted as true for the purpose of deciding the motion to dismiss (but which Defendants categorically deny), created a strong inference that false bills were submitted to the government. In finding that "strong inference," the Court pointed to allegations of: "the outright falsification of outpatient records by the program's own director [allegation dated 2012], the open practice of podiatry by residents lacking the basic permit required by state law [allegations dated 2010 to 2012], the doctoring of residents' academic records to avoid

---

[2] It is unclear why Judge Dearie commented that the "relevant time" extends as far as 2014; the Amended Complaint contains allegations that extend only through October 2012. June 30, 2013 was the end of the resident year during which Relator filed her original Complaint in this case.

[3] Relator apparently agreed with a beginning date in 2010 until recently, as her three discovery requests (which were never revised) sought documents from 2010 to the present. (*See* Ex. 1.)



October 19, 2018
Page 3

jeopardizing accreditation (and in turn, federal program funding) [allegations dated 2012], and abdication of the supervision that is the sine qua non of an educational program [allegations dated from July 2010 through 2012]." (Opinion at 14.)

Relator was employed as a resident in the PMSR program from July 2010 until "in or about late 2013." (Am. Compl.¶ 6; Op. at 3.) Relator ceased participating in the PMSR program as of May 2012, but continued to be employed at CIH for some time thereafter. (Am. Compl. ¶ 10.) Relator admits that after her May 30, 2012 reassignment, she was no longer in a position to have direct knowledge of any aspect of the PMSR program.[4] (Am. Compl. ¶ 101.) There is no basis for expanding discovery beyond the point at which she could possibly have had personal knowledge of the PMSR program. As her duties as a resident ended in 2012, Defendants propose a discovery period beginning July 2010 through October 2012, when she filed her original Complaint.

Under Fed. R. Civ. P. 26(c)(1), a "court may, for good cause, issue an order" limiting discovery "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 26(b)(2)(C) permits a court to limit discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." A court has "the discretion to limit the scope of discovery to what the court perceive[s are] the central issues." *Hill v. Southwestern Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017). Further, discovery must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Courts in *qui tam* cases review the allegations in a complaint to determine the period covering the claims. *See U.S. ex rel. Bilotta v. Novartis Pharm. Corp.*, No. 11 CIV. 0071 (PGG), 2015 WL 13649823, at *3-4 (S.D.N.Y. July 29, 2015); *U.S. ex rel. King v. Solvay S.A.*, Civ. Action No. H-06-2662, 2013 WL 820498, at *2-4, 7 (S.D. Tex. Mar. 5, 2013). "[D]iscovery must hew closely to matters specifically described in the complaint lest discovery, because of its burden and expense, become the centerpiece of litigation strategy." *U.S. ex rel. Conroy v. Select Medical Corp.*, 307 F. Supp. 3d 896, 903 (S.D. Ind. 2018) (quoting *McCartor v. Rolls–Royce Corp.*, 2013 WL 5348536, at *7 (S.D. Ind. Sept. 24, 2013)); *see also U.S. ex rel. Dicken v. Northwest Eye Clinic, P.A.*, Case No. 0:13–cv–2691 (JNE/KMM), 2018 WL 2980394, at *2-3 (D. Minn. June 14, 2018) (holding that a seven-year discovery period was appropriate where the complaint alleged "dozens of examples of alleged fraudulent activity" only during that period); *Uchytil v. Avande, Inc.*, Case No. C12-2091-JCC, 2018 WL 4150889, at *1 (W.D. Wash. Feb. 27, 2018) (limiting the

---

[4] Even during the period of her active residency, from July 2010 until May 30, 2012, Gelman asserts that defendants caused the submission of false claims as a result of alleged "standard operating procedures" that she neither defines nor describes with particularity. (Am Compl. ¶¶ 52, 57, 62.) Accordingly, Relator does not allege direct knowledge of CIH's billing procedures.



October 19, 2018
Page 4

discovery in a FCA case to 2010-2012, because "[a]ll specific allegations of misconduct in the SAC occurred between April 2010 and December 2012."). Many courts in *qui tam* cases limit discovery to the period during which the relator has personal knowledge, or a reasonable expansion of that period. *See, e.g.*, *U.S. ex rel. Regan v. Medtronic, Inc.*, Nos. 95–1236–MLB, 96–1309–MLB, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (denying plaintiff's request for a 20-year discovery period and limiting discovery to January 1990 - January 1995 after noting the relator's personal knowledge extended to a period from October 1991 to August 1994).

*U.S. ex rel. Jacobs v. CDS, P.A.*, Case No. 4:14-cv-00301-BLW, 2016 WL 4146077 (D. Idaho Aug. 3, 2016) is an example of how courts address this issue. There, the court did not allow discovery as far back or forward as relator requested, for periods predating and after his employment, and set the discovery period at January 1, 2010 through January 31, 2014 because "[t]he complaint … focuses on the period August 2010 through May 2013." *Id.* at *2.

Vague, unsupported allegations of ongoing conduct or conduct prior to the Relator's employment do not change the result, particularly in FCA cases where Rule 9(b)'s specificity requirements apply. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, Civ. A. No. 09-4672, 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013) ("cursory allegations [of continuing misconduct], made on information and belief alone, are unquestionably insufficient to open the door to broad and burdensome discovery into Defendant's nationwide practices over the course of more than seven years."). The 11th Circuit addressed the temporal scope of a *qui tam* FCA case, which alleged in general terms, as Relator does here, that the alleged false billing is ongoing. The 11th Circuit determined that the proper temporal scope began when the relator's employment at the defendant corporation started, and ended at the filing of the original Complaint. *See U.S. ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1358-59 (11th Cir. 2005); *see also U.S. ex rel. Bane v. Breathe Easy Pulmonary Services, Inc.*, 2008 WL 4057549 (M.D. Fla. 2008) (holding that the discovery cutoff is the date on which the complaint was filed). Here, that would limit Relator's right to discovery from July 2010 through October 12, 2012.

*King* is instructive. There, as here, the complaint contained generalized allegations that false claims were submitted "to the present." 2013 WL 820498, at *3. The court held these were "insufficient to justify the burden of allowing discovery 'to the present.'" *Id.* at *4. In limiting discovery to a six-year period, rather than the relator-requested 12-year period, the court explained that "there are no specific and particularized allegations of conduct occurring after … February 7, 2008." *Id.* To obtain discovery, the Court reasoned, a relator must demonstrate that the proposed temporal scope is aligned with the particularized allegations in the complaint, i.e., "Relators must



October 19, 2018
Page 5

provide reliable indicia leading to a strong inference that claims were actually submitted to satisfy Rule 9(b) [within the proposed temporal scope]."[5] *Id.*

In this case, Judge Dearie has already made clear which allegations appeared to provide "reliable indicia leading to a strong inference" of False Claims Act violations, all of which were alleged to have occurred before July 2010 or later than 2012, or, at most, June 2013, the outside date suggested by Defendants. (*See supra* at 2-3; Op. at 14.) The paltry, boilerplate allegations in the Amended Complaint concerning a more expansive time period do not demonstrate the "reliable indicia leading to a strong inference" that courts require. Accordingly, Defendants respectfully request that this Court limit Relator's discovery to the period July 2010 to October 12, 2012, or at the latest, June 30, 2013.

Respectfully submitted,[6]

| **KATTEN MUCHIN ROSENMAN LLP** | **THE LAW OFFICE OF KEIR N. DOUGALL, P.C.** |
|---|---|
| By: */s/ Joseph V. Willey* <br> Joseph V. Willey, Esq. | By: */s/ Keir N. Dougall* <br> Keir N. Dougall, Esq. |
| 575 Madison Avenue <br> New York, NY 10022 <br> Telephone: (212) 940-8800 <br> Facsimile: (212) 940-8776 | 140 Broadway, 46th Floor <br> New York, NY 10005 <br> Telephone: (212) 858-7576 <br> Facsimile: (212) 858-7750 |
| *Counsel for Defendants New York City Health and Hospitals Corp. and Physician Affiliate Group of New York, P.C.* | *Counsel for Defendant Glenn Donovan, D.P.M.* |

cc:   Kevin P. Mulry, Esq.
      Geoffrey R. Kaiser, Esq.
      David A. Zarett, Esq.

---

[5] The "reliable indicia" standard applied in *King*, citing Fifth Circuit precedent, has been adopted in *U.S. ex rel. Chorches v. American Medical Response, Inc.*, 865 F. 3d 71, 85 (2d Cir. 2017).

[6] Consistent with Your Honor's Individual Practice IV.B, Defendants have limited this letter brief to five pages of substantive content.