UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA and
NEW YORK STATE, *ex rel. Irina Gelman, DPM*,

                        Plaintiffs,

                                                        **REPORT AND**
                                                         **RECOMMENDATION**
              -against-                                  12-CV-5142-RJD-SJB

GLENN J. DONOVAN, DPM, NEW YORK CITY
HEALTH and HOSPITALS CORPORATION and
PHYSICIAN AFFILIATE GROUP OF
NEW YORK, P.C.,

                        Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       The parties have jointly filed a motion for approval of their settlement agreement (the "Settlement Agreement") in this federal False Claims Act ("FCA") and New York False Claims Act ("NY FCA") *qui tam* action filed by Irina Gelman ("Gelman" or "Relator"), a former podiatry resident at Coney Island Hospital, on behalf of the United States and the State of New York (collectively, the "Government"), against Defendants Glenn J. Donovan, DPM ("Donovan"), the New York City Health and Hospitals Corporation ("NYC HHC"), and the Physician Affiliate Group of New York, P.C. ("PAGNY") (collectively, "Defendants"). (Mot. for Settlement Approval dated June 29, 2020, Dkt. No. 122; Settlement Agreement and Order dated June 26, 2020 ("Settlement Agreement"), Dkt. No. 123; Parties' Joint Mem. in Supp. of Mot. of Settlement Agreement dated July 16, 2020 ("Mem."), Dkt. No. 124). The Amended Complaint alleges Defendants falsified patient records and program-accreditation papers to hide

the fact that residents were not supervised while servicing hospital patients and some residents lacked licenses.[1]

The Settlement Agreement, effective on the date it is approved by the Court, is entered into by Donovan, NYC HHC, and Gelman to resolve all allegations in the Amended Complaint. (Settlement Agreement at 1, 4, 10–11). Per the Settlement Agreement, Gelman agrees to dismiss PAGNY from the case with prejudice, and PAGNY is not a party to the Settlement Agreement. (*Id.* ¶ C).

The Honorable Raymond J. Dearie referred the motion for settlement approval to the undersigned for a report and recommendation. (Mot. Referred dated June 29, 2020).

The parties failed to submit a memorandum of law with their first motion for approval. The Court directed them to do so. (Order dated July 7, 2020 ("The parties filed a motion for settlement approval. The motion only contains the agreement between parties, but no legal memorandum demonstrating that the agreement is consistent with 31 U.S.C. § 3730. The parties shall submit a memorandum . . . by 7/21/2020. So Ordered by Magistrate Judge Sanket J. Bulsara on 7/7/2020.") (citations omitted)). On July 23, 2020, the Court denied the motion for approval without prejudice to renewal because the parties "failed to provide evidence that (1) Relator Gelman's settlement recovery is reasonable and within the statutorily required ranges and (2) the amounts to be paid by Defendants for expenses are reasonable and were necessarily incurred and for attorney's fees and costs are reasonable." *United States ex*

---

[1] For a complete recitation of the allegations, see the Memorandum and Order on Defendants' motion to dismiss the Amended Complaint, *United States ex rel. Gelman v. Donovan (Gelman I)*, No. 12-CV-5142, 2017 WL 4280543, at *1–4 (E.D.N.Y. Sept. 25, 2017).

*rel. Gelman v. Donovan (Gelman II)*, No. 12-CV-5142, 2020 WL 4251363, at *1 (E.D.N.Y. July 23, 2020). The Court permitted the parties to resubmit the Settlement Agreement for approval if they supported a renewed submission with arguments in a memorandum of law and declarations to support a conclusion "that Gelman's recovery of settlement proceeds is between 25 and 30 percent of the federal FCA portion of the settlement pursuant to 31 U.S.C. § 3730(d)(2), and between 25 and 30 percent of the NY FCA portion of the settlement pursuant to N.Y. State Fin. Law § 190(6)(b), a range of $312,500.00 and $375,000.00 when considering the entire settlement amount," and that "expenses are reasonable and were necessarily incurred and such fees and costs are reasonable pursuant to 31 U.S.C. § 3730(d)(2) and N.Y. State Fin. Law § 190(6)(b)." *Gelman II*, 2020 WL 4251363, at *4.

On August 4, 2020, Relator Gelman filed both a memorandum of law and a declaration from her counsel addressing the issues identified by the Court. (*See* Relator's Suppl. Mem. of Law in Further Supp. of Settlement Agreement dated Aug. 4, 2020 ("Suppl. Mem."), Dkt. No. 126; Decl. of Kevin P. Mulry in Supp. of Settlement Agreement dated Aug. 4, 2020 ("Mulry Decl."), Dkt. No. 127). The additional submission includes three agreements that were not previously provided and which operate in conjunction with the Settlement Agreement: (1) an agreement between Gelman and the United States for the payment of Relator's share pursuant to the portion of the settlement to be paid to the United States, (Agreement Regarding Payment of Relator's Share Between Relator Irina Gelman, DPM, and the United States dated June 5, 2020 ("Federal Recovery Agreement"), attached as Ex. B to the Mulry Decl., Dkt. No. 127); (2) an agreement between Gelman and the State of New York for Relator's share from the New York portion of the settlement, (Agreement Regarding Payment of

3

Relator's Share Between Relator Irina Gelman, DPM and the State of New York dated July 7, 2020 ("State Recovery Agreement"), attached as Ex. C to the Mulry Decl., Dkt. No. 127); and (3) an agreement whereby NYC HHC and Donovan agree to pay certain fees, costs, and expenses to Gelman, (Agreement Regarding Payment of Attorneys' Fees, Expenses, and Other Legal Costs dated June 26, 2020 ("Attorneys' Fees and Costs Agreement"), attached as Ex. D to the Mulry Decl., Dkt. No. 127). Defendants NYC HHC, PAGNY, and Donovon filed a letter stating they did not object to Plaintiffs' submissions. (*See* Defs.' Letter dated Aug. 6, 2020, Dkt. No. 128 at 1). And "[t]he attorneys for the United States and New York State were provided with the Attorneys' Fees and Costs Agreement and advised that they had no objection to the attorneys' fees and costs being paid." (Mulry Decl. ¶ 30).

For the reasons stated below, and in light of the supplemental submissions, the Court respectfully recommends that the settlement agreement be approved.

## DISCUSSION

The FCA permits a private person to bring a *qui tam* action on behalf of the United States. 31 U.S.C. § 3730(b)(1). The statute "unambiguously states that a *qui tam* action 'may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.'" *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 401 (2d Cir. 2019) (quoting § 3730(b)(1)). The FCA is one of the "substantive statutes that specifically require[s] the district court's consent before cases involving those statutory causes of action may be settled." *Id.* "[T]his provision 'applies only in cases where a plaintiff seeks voluntary dismissal of a claim or action brought under the False Claims Act, and not where the court orders dismissal.'" *Chailla v. Navient Dep't of Educ.*, 791 F. App'x 226, 229 (2d Cir. 2019) (quoting *Minotti v.*

4

*Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (per curiam)), *cert. denied*, 140 S. Ct. 2527 (2020); *e.g.*, *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 91 (2d Cir. 2008) ("Because the dismissal in this case came not as a result of a settlement, the district court did not err by neglecting to secure the Attorney General's consent." (citing *Minotti*, 895 F.2d at 104)).

"To incentivize private persons to uncover, report, and prosecute FCA claims for the benefit of the United States, the FCA provides that if a *qui tam* action is successful, the relator will generally be entitled to receive a portion of the amount recovered from the defendants." *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 14 (2d Cir. 2019) (citations omitted). A successful relator is entitled to "receive an amount which the court decides is reasonable for collecting the civil penalty and damages," which "shall be not less than 25 percent and not more than 30 percent of the proceeds of the . . . settlement and shall be paid out of such proceeds." 31 U.S.C. § 3730(d)(2). The relator is entitled to a higher minimum percentage than a case where the government decides to intervene. *Compare id.*, *with* § 3730(d)(1) (setting relator's recovery at a minimum of 15, but no more than 25, percent when the government intervenes); *see United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 398 n.7 (4th Cir. 2013) ("The government's decisions as to intervention bear not only on who conducts the litigation in the respective matters, but also the eventual award, if any, to the relator."). "These sections indicate that the district court plays an important role in allocating the proceeds of a settlement by determining the amount to be received by the *qui tam* plaintiff within the overall limitation of no more than 30% of those proceeds[.]" *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 724 (9th Cir. 1994). In either case, the relator is also entitled to "receive an amount for reasonable expenses

which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," to be "awarded against the defendant."  31 U.S.C. § 3730(d)(1)-(2).

The NY FCA includes virtually identical provisions.  *See* N.Y. State Fin. Law § 190(6)(b) ("If the attorney general or a local government does not elect to intervene or convert the action, and the action is successful, then the person or persons who initiated the qui tam action which obtains proceeds shall be entitled to receive between twenty-five and thirty percent of the proceeds recovered in the action or settlement of the action. . . .  Such person shall also receive an amount for reasonable expenses that the court finds to have been necessarily incurred, reasonable attorneys' fees, and costs . . . . All such expenses, fees, and costs shall be awarded against the defendant."). "Additionally, because '[t]he NYFCA follows the federal False Claims Act,' New York courts 'look toward federal law when interpreting the New York act.'"  *Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 100 (2d Cir. 2019) (alteration in original) (quoting *State ex rel. Seiden v. Utica First Ins. Co.*, 96 A.D.3d 67, 71 (1st Dep't 2012)).

Thus, to grant approval of the settlement here, the Court must consider whether the Government consents to the Settlement Agreement and the allocation of proceeds to Relator Gelman is within the statutory ranges and reasonable.  *See, e.g.*, *United States ex rel. Parikh v. Premera Blue Cross*, No. 01-CV-476, 2007 WL 1461165, at *2 (W.D. Wash. May 16, 2007) ("To fulfill its duties under § 3730(d) the Court must determine whether the settlement amount is reasonable.").  And the Court must also analyze whether Gelman is only being compensated for expenses that were necessarily incurred

6

and for reasonable fees and costs.[2] *See United States ex rel. Lissack v. Sakura Glob. Cap. Mkts., Inc.*, 377 F.3d 145, 152 n.7 (2d Cir. 2004) ("If the Government does not intervene, as is the case here, 'the person bringing the action or settling the claim shall receive . . . an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.'" (quoting § 3730(d)(2)).

The Settlement Agreement meets these requirements.

I.  Government Consent

First, the United States consents to the settlement.[3] The parties filed a letter from the United States Attorney's Office for the Eastern District of New York stating,

> The United States and the State of New York have reviewed the Settlement Agreement . . . . [T]he Attorney General's consent to dismissal of the *qui tam* is required by 31 U.S.C. § 3730(b)(1). . . . [T]his Office, on behalf of both the United States and the State of New York, writes to confirm that we have no objections to the Settlement Agreement, and will file a Joint Consent to Dismissal once payment of the Federal and State settlement amounts have been received.

(Letter from Rachel G. Balaban to Kevin P. Mulry dated July 10, 2020, attached as Ex. A to Mem., Dkt. No. 124). Thus, the Settlement Agreement complies with the government-consent requirement of 31 U.S.C. § 3730(b).

II.  Relator Gelman's Recovery Is Reasonable

Next, the FCA and NY FCA require a relator's recovery to be within the statutorily required range and reasonable. Courts have considered a number of factors in determining whether a relator's recovery is reasonable, including "(i) the significance of

---

[2] Where the government decides to prosecute the case, additional inquiry is required for the settlement to be approved. The settlement must be "fair, adequate, and reasonable under all the circumstances," 31 U.S.C. § 3730(c)(2)(B).

[3] The NY FCA does not require the consent of the New York State Attorney General.

7

the information provided to the government, (ii) the contribution of the person bringing the action to the result obtained, and (iii) whether the information that formed the basis for the suit was known to the government." *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, No. 04-CV-199, 2009 WL 3756343, at *2 (E.D. Va. Oct. 14, 2009), *aff'd sub nom. United States ex rel. DRC, Inc. v. Custer*, 446 F. App'x 561 (4th Cir. 2011) (per curiam); *see also United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 369 F. Supp. 3d 1346, 1348 (N.D. Ga. 2019) ("[T]he three factors articulated in the Senate's legislative history for determining a relator's share of the recovery[ ] [is] often referenced in other court decisions. These factors include: '(A) the significance of the information provided to the Government; (B) the contribution of the person bringing the action to the result obtained; and (C) whether the information which formed the basis for the suit was known to the Government.'" (quoting S. Rep. No. 99-345 at 28 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5293)).[4]

Under the Settlement Agreement, Donovan and NYC HHC will pay the United States $1,030,325.00 and the State of New York $219,675.00. (Settlement Agreement ¶ 1).[5]

---

[4] It is appropriate to consider the NY FCA portion of the settlement under the same factors because the statute is silent on the standards for approval. *See, e.g.*, *Dhaliwal*, 752 F. App'x at 100; *see also City of New York v. Siemens Elec., LLC.*, 65 Misc. 3d 333, 338 (N.Y. Sup. Ct. 2019) ("In the context of a claim under the NYFCA, New York State case law does not provide a standard to determine whether a 'proposed settlement is fair, adequate, and reasonable with respect to all parties under the circumstances.' Since the NYFCA is modeled after the FCA, it is appropriate to look to federal jurisprudence when interpreting the NYFCA." (quoting N.Y. State Fin. Law § 190(5)(b)(ii))).

[5] The Settlement Agreement provides, "the allocation of the" settlement amount among the United States, New York, and Gelman "shall be and has been handled separately . . . without any involvement by or input from" Donovan or NYC HHC. (*Id.* ¶ 5).

8

Pursuant to a separate agreement between the United States and Relator Gelman, Relator Gelman will receive 27.5 percent of the federal settlement proceeds, or $283,339.38. (*See* Mulry Decl. ¶ 9; Federal Recovery Agreement ¶ 1). As for the New York State portion, also pursuant to a separate agreement, Relator Gelman will receive 27.5 percent of the state share of the settlement proceeds, or $60,410.62. (Mulry Decl. ¶ 10; State Recovery Agreement ¶ 1). The combined recovery for Relator is $343,750.00, which is 27.5 percent of the total settlement amount of $1,250,000. (Mulry Decl. ¶ 11). There have been no objections or motions to intervene filed since the settlement agreement was filed on the Court's docket.

Considering (1) that Relator Gelman provided useful information that became the basis for this lawsuit, which in turn resulted in a recovery of more than $1 million for the Government; (2) that the information included allegations that Defendants fraudulently concealed "by omission from almost a decade's worth of filings for government monies" that

> the residents—graduate students in training, not licensed podiatrists—were rarely supervised when rendering podiatric services to patients; that at least two, including one promoted to Chief Resident, practiced podiatry while lacking the permit required to participate in a residency; that the program director regularly falsified patient records to camouflage his failure to supervise; that the director also falsified certain residents' records to conceal deficiencies from program-accreditation authorities; and that Gelman, after bringing these problems to light, was fired in retaliation,

*Gelman I*, 2017 WL 4280543, at *1; (*see also* Mulry Decl. ¶¶ 4–5; Suppl. Mem. at 3–5); (3) that the Court denied Defendants' motion to dismiss as to the FCA and NY FCA claims, *Gelman I*, 2017 WL 4280543, at *8; (4) that Relator Gelman substantially contributed to the matter for eight years of litigation, in which the Government declined to intervene, including assistance in preparation of the Amended Complaint,

9

investigation of the facts underlying the case, review of documentation, identification of and preparation for the examination of witnesses, preparation and participation in mediation, and assistance and participation in the settlement, (*see* Mulry Decl. ¶ 5; Suppl. Mem. at 2–5); (5) that no party has objected and, in fact, the United States and New York State consent to the settlement and recovery award; and (6) that the parties jointly agree to Relator Gelman's recovery, Relator Gelman's recovery of 27.5 percent of the settlement proceeds is reasonable and within the ranges of 25 percent to 30 percent required by 31 U.S.C. § 3730(d) and N.Y. State Fin. Law § 190(6).

III.  Expenses, Attorney's Fees, and Costs

A settling relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C. § 3730(d)(2).[6] Here, Defendants and Relator Gelman have stipulated to the recovery of fees, expenses, and costs, and neither the United States nor the State of New York has lodged an objection. In this situation, the Court cannot

> treat[] the issue of fees and costs as if it was being presented with a fee application separately made after a plaintiff has prevailed through litigation or settlement. In those circumstances, district courts have the discretion to set attorneys' fees as they reasonably see fit. Where the issue of fees and costs is presented in the context of a complete settlement agreement that includes an agreement with respect to fees and costs, however, the inquiry is different as the settlement is submitted for approval, not adjustment or revision. Accordingly, [a] district court err[s] . . . by evaluating the

---

[6] Occasionally, parties that settle reserve the right for a relator to separately bring an application for fees, costs, and expenses. *See, e.g.*, *United States v. Life Spine Inc.*, No. 18-CV-1311, 2019 WL 6038025, at *3 (S.D.N.Y. Nov. 6, 2019) (entering stipulation of settlement with reservation of relator's right "to recover their reasonable expenses and attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)"); *United States ex rel. Geraci v. Zwanger & Pesiri Radiology Grp., LLP*, No. 13-CV-5002, 2016 WL 6915266, at *4–5 (E.D.N.Y. Nov. 16, 2016) (same).

> settlement agreement under the lens of a fee application, and then proceeding to rewrite the agreement.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606 (2d Cir. 2020) (citing *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (per curiam)).

The Court must tether its reasonableness evaluation to the objectives of the FCA. In the FCA, the evaluation fees, costs, and expenses[7] by the Court is intended to ensure that the government receives its proper share of any recovery. *See United States ex rel. Killingsworth*, 25 F.3d at 724 ("[T]he [False Claims] Act . . . authoriz[es] the district court to bar a *qui tam* plaintiff and defendant from artificially structuring a settlement to deny the government its proper share of the settlement proceeds."). When a relator seeks to inflate its recovery beyond the 25 to 35 percent of the proceeds of settlement— with increased expenses, fees, and costs—the government, as the real party in interest, is harmed. *See United States ex rel. Sharma v. Univ. of S. Cal.*, 217 F.3d 1141, 1144 (9th Cir. 2000) ("[A]ttorneys' fees are not allowable to inflate the recovery of the plaintiff's 'proceeds' under the FCA."); *see, e.g., United States ex rel. Howze v. Sleep Ctrs. Fort Wayne, LLC*, No. 11-CV-35, 2016 WL 1358457, at *5 (N.D. Ind. Apr. 6, 2016) (rejecting settlement agreement where relator sought to recover 100% of the proceeds from settlement); *cf. United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 23 (2d Cir. 2016) ("A person pursuing a *qui tam* action under the False Claims Act—the relator—asserts a claim based on a right belonging to the United States.").

---

[7] "The FCA distinguishes among 'expenses, [attorney's] fees, and costs' as individual terms in the context of a successful False Claims Act *qui tam* action." *Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 817 F.3d 433, 437 (2d Cir. 2016) ("[T]he distinction between 'costs' and 'expenses' is well established in the Federal Rules of Civil Procedure . . . [and] is no less clear in the FCA.").

11

A. <u>Attorney's Fees</u>

Looking first to attorney's fees, while courts sometimes use the lodestar method to determine whether a fee request is reasonable, *see, e.g.*, *United States ex rel. Tommasino v. Guida*, No. 10-CV-4644, 2017 WL 878587, at *1 (E.D.N.Y. Mar. 6, 2017) ("Generally, to determine reasonable attorneys' fees, a court must calculate a 'lodestar figure[.]'"), the fees sought here are by way of a settlement agreement, not a motion for a fee award. The lodestar would provide the Court with limited options: if the lodestar suggested counsel would recover fees above the reasonable rate for attorney's fees in this District, the Court's options would be to either "reject the proposed settlement and delay proceedings to see if a different settlement can be achieved," perhaps "suggest[ing] . . . an amount of attorneys' fees and costs it would find reasonable under the circumstances"; reject the proposal; or " proceed with litigation." *See Fisher*, 948 F.3d at 605–06; *cf. United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1048 (6th Cir. 1994) ("The judge's discretion is not diminished even when parties have stipulated to the reasonableness of the number of hours and the hourly rate."). Although the parties tie their analysis almost exclusively to the lodestar, such focus is misplaced. The goal of the FCA's fee provisions is not to ensure that a relator recovers reasonable fees as measured against the lodestar—the goal is to ensure that the fees recovered by counsel are not so inflated as to effectively transfer proceeds to lawyers that are should instead go to the Government.

The Settlement Agreement provides that Relator Gelman is entitled to attorney's fees and costs, and Donovan and NYC HHC "shall resolve by separate agreement payment to Relator for expenses, attorney's fees, and costs." (Settlement Agreement ¶ 4.). Pursuant to the Attorneys' Fees and Costs Agreement, Donovan and NYC HHC

12

agree to pay Relator Gelman a total of $622,266.73 for combined attorney's fees and costs, to be distributed among three sets of law firms that represented Relator Gelman. (Mulry Decl. ¶¶ 12–13; Attorneys' Fees and Costs Agreement ¶ 1). The Attorneys' Fees and Costs Agreement allocates: (a) $391,766.66 to Farrell Fritz, P.C., which includes $3,383.16 in costs; (b) $174,253.94 to Kaiser Law Firm, PLLC, which includes $314.76 in costs; and (c) $56,246.13 to Weiss Zarett Bronfman Sonneklar & Levy, P.C., which includes $1,837.50 in costs. (Mulry Decl. ¶¶ 14–16; Attorneys' Fees and Costs Agreement ¶ 1). The total amount of attorneys' fees to be awarded is $616,731.31.

      The parties provide background information about counsel, hourly rates, number of hours worked, and contemporaneous time records in support of the fee and cost portion of the settlement. (Mulry Decl. ¶¶ 14–27, 31–36; *see also* Emails with Time Records, attached as Exs. E–M to Mulry Decl., Dkt. No. 127). Relator Gelman's counsel billed a total of 1,189.04 hours over this eight-year case. (*See* Mulry Decl. ¶¶ 14–16). The billing rates for "partners," "principals," and "shareholders" among the three law firms ranged from $300 to $600 per hour; for associates, $300 to $350 per hour; and clerks and paralegals, $110 to $295 per hour. (*Id.*). Attorney Kevin Mulry, a partner at Farrell Fritz, P.C., who billed for 652.8 hours of legal work for a total of $380,064.00 in fees, accounts for more than half of the fee request. (*Id.* ¶ 14). Next, attorney Geoffrey Kaiser, a principal at Kaiser Law Firm, PLLC, billed 361.34 hours for a total of $173,942.50. (*Id.* ¶ 15). Two other attorneys billed 50 to 60 hours, and all others billed

less than 25. (*Id.* ¶¶ 14–16).[8] "[T]he United States and New York State were provided with the Attorneys' Fees and Costs Agreement and advised that they had no objection to the attorneys' fees and costs being paid." (*Id.* ¶ 30).

Given that (1) all parties—Relator Gelman, the United States, New York, and Defendants—agree that these fees shall be awarded as allocated in the Attorney's Fees and Cost Agreement, there is no concern that the fees and costs awarded is being used to inflate Relator Gelman's share at the expense of the Government's recovery; (2) the fees

---

[8] Counsel's argument that fees should be awarded based on rates in FCA cases in the Southern District of New York based on "unitary market" market theory is inapposite. For one, counsel does not cite a singled case from this District awarding the rates sought. (*See* Suppl. Mem. at 7–8). In fact, courts in the Eastern District do not award the rates sought, even in FCA cases. *See, e.g.*, *Guida*, 2017 WL 878587, at *5 ("Beyond [*United States ex rel. Doe v.*] *Acupath Lab*[*oratories, Inc.*, No. CV 10-4819, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015)], however, relator has identified no other *qui tam* case where such high rates were approved, and, as noted above, the highest rates in this district rarely exceed $450 per hour, even for the most experienced attorneys in similarly complex commercial cases."). Furthermore, courts in this District have rejected the "unitary market" theory as inconsistent with the rule that a court apply the market rate for fees for attorneys in the forum district. *See, e.g.*, *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2020 WL 4783399, at *10 (E.D.N.Y. Aug. 18, 2020) (finding practice of misciting cases from the Southern District of New York used to support higher fee request "unacceptable" "[i]n light of the Forum Rule, which instructs district courts to 'generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee'" (quoting *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017))); *BWP Media USA, Inc. v. Mishka NYC LLC*, No. 13-CV-4435, 2016 WL 8309676, at *5 (E.D.N.Y. Dec. 28, 2016) ("Plaintiff's requested rates are out of step with what is a 'presumptively reasonable' rate in the Eastern District of New York. . . . Plaintiff argues that the Court should look to the hourly rates of counsel in the Southern District of New York. When a litigant requests a higher out-of-district rate, 'a district court must first apply a presumption in favor of application of the forum rule.' . . . BWP has not met that burden here." (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009)), *report and recommendation adopted*, 2017 WL 880855 (Mar. 3, 2017). But more to the point, the analysis is inappropriate in the FCA settlement context. The question is not what the Court should *award* counsel, but rather whether the parties' agreement is reasonable (measured by among other things, including whether the Government objects and whether the fee award is being used to improperly inflate the relator's recovery *at the expense* of the Government's recovery).

14

are charged to Defendants and were negotiated separately from the proceeds for the Government recovery (thus, any Court reduction in the fees would not result in a larger proceeds award for the Government); (3) this was a complex FCA case that spanned eight years; and (4) counsel provided sufficient documentation of the fees, the Court finds the attorney's fees request to be reasonable. *See* 31 U.S.C. § 3730(d)(2); *e.g.*, *United States ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. 15-CV-80, 2018 U.S. Dist. LEXIS 186611, at *2 (D. Mont. Oct. 31, 2018) ("[P]ursuant to the settlement agreement reached, the Relators will receive from Defendants an agreed-upon amount for reasonable and necessarily-incurred expenses and attorneys' fees, in accordance with 31 U.S.C. § 3730(d)(2). The parties, the United States, and the State of Montana have reviewed and consent to all terms of the settlement agreement and agree that all of its terms are reasonable and appropriate under the circumstances. . . . The Court will not disturb the settlement agreement reached by the parties to which the United States and the State of Montana have also consented. On that basis, the Court approves dismissing this case with prejudice." (footnotes omitted)).

    B.  <u>Costs and Expenses</u>

Costs and expenses may be awarded when they are "reasonable, incidental, and necessary to the representation" in the action and have been documented. *See Fisher*, 948 F.3d at 601. The Attorneys' Fees and Costs Agreement, as Relator's counsel explains, includes a request a for costs "for this eight-year old litigation," which "amount to a combined total of $5,535.42 . . . for items such as court filing fees, document vendor services, computer legal research, Pacer charges, overnight delivery expense, and copying expense." (Suppl. Mem. at 12). None of the costs are itemized or specifically identified. Relator Gelman's counsel argues that the "costs are reasonable, uncontested,

15

and should be approved as part of the parties agreements on attorneys' fees and costs." (*Id.*).

In light of (1) the consent of all parties to the cost and expenses to be recovered by Relator Gelman, including the United States and New York State; (2) the costs and expenses are charged to Defendants; (3) the declaration of counsel regarding the costs and expenses; and (4) the length and complexity of this litigation, the Court finds these costs and expenses to be reasonable and necessarily incurred. *See* 31 U.S.C. § 3730(d)(2); *cf.*, *Tommasino*, 2017 WL 878587, at *11 (awarding all costs in but reducing the amount legal research costs, finding that, in the context of the total costs sought, the amount of legal research costs was "excessive"); *United States ex rel. Trakhter v. Provider Servs., Inc.*, No. 11-CV-217, 2018 WL 1128445, at *1–2 (S.D. Ohio Mar. 1, 2018) (awarding costs and expenses to which defendants consented, but denying portion objected to and not covered by the FCA).

\*      \*      \*      \*

Therefore, each component of the FCA's requirements for dismissal of a case have been met, and the Settlement Agreement should be approved. *See, e.g.*, *United States ex rel. Parikh v. Premera Blue Cross*, No. 01-CV-476, 2007 WL 1585089, at *1 (W.D. Wash. May 23, 2007) ("Based on the Court's review of these documents, the Court concludes that the settlement agreement is reasonable. . . . Because all parties agree to the settlement, and because the terms of the settlement appear reasonable in the context of this litigation, the Court approves the settlement agreement.").

## CONCLUSION

For these reasons, it is respectfully recommended that the renewed motion for approval for the Settlement Agreement be granted and Relator and Defendants be

16

directed to promptly sign and file a joint stipulation of dismissal pursuant to the Settlement Agreement.  (*See* Settlement Agreement ¶ 12).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this Report.  Failure to file timely objections may waive the right to appeal the District Court's order in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

SO ORDERED.

*/s/ Sanket J. Bulsara* September 17, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

17